IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: EXIDE TECHNOLOGIES, | : | Chapter 11 |
| | : | |
| Reorganized Debtors. | : | Case No. 13-11482 (KJC) |
| _____ | : | |
| SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, | : : : | |
| Appellant, | : | |
| v. | : | Civ. No. 19-891 (LPS) |
| | : | |
| EXIDE TECHNOLOGIES, | : | |
| | : | |
| Appellee. | : | |

_____

**MEMORANDUM**

**I.  INTRODUCTION**

Appellant South Coast Air Quality Management District ("District"), a state-level air-quality regulatory agency, has appealed the decision entered by the Bankruptcy Court in the Chapter 11 cases of reorganized debtor Exide Technologies ("Exide") and certain of its affiliates ("Debtors"), dated April 30, 2019, *In re Exide Technologies*, 601 B.R. 271 (Bankr. D. Del. 2019) ("Decision"), which, *inter alia*, determined that (1) the District's pre-petition claims for non-compensatory environmental penalties for alleged air emission violations are not protected from discharge by the Bankruptcy Code and were subject to discharge upon confirmation of Exide's Chapter 11 plan, and (2) the penalties imposed for Exide's behavior during the bankruptcy are not administrative expenses entitled to priority status under § 503(b) of the Bankruptcy Code. In addition to the District's opening and reply briefs (D.I. 22, 31), the Court has considered Exide's answering brief (D.I. 28), as well as the brief filed by the Securities and Exchange Commission ("SEC") as amicus curiae in support of the District (D.I. 25). For the reasons set forth below, the Court will affirm the Decision.

## II. BACKGROUND

### A. Exide's Bankruptcy and the District's Lawsuit

This appeal relates to Exide's former lead battery recycling facility located in Los Angeles County, Vernon, California (the "Vernon Facility"). Except for a temporary closure in 2013, Exide operated the Vernon Facility from 2000, when it purchased the facility's owner, GNB Technologies Inc., until its permanent closure in 2015. (App. B0545)[1] Until these closures, the Vernon Facility had been operated as a secondary lead and/or metal recycling operation on a nearly continual basis since 1922. (*Id.*) The Vernon Facility's primary function was to recycle lead from spent automotive batteries. Prior to 2013, it supplied a substantial share of Exide's lead requirements for its national manufacturing program.

The District is a public agency created in 1976 by the California legislature to facilitate compliance with the federal Clean Air Act and to implement the state air quality program in California's South Coast Air Basin, comprising the counties of Los Angeles, Orange, Riverside, and San Bernadino. Cal. Health & Safety Code §§ 40410 & 40402. The federal Environmental Protection Agency "sets ambient air quality standards." *W.M. Barr & Co. v. S. Coast Air Quality Mgmt. Dist.,* 143 Cal. Rptr. 3d 403, 407 (Ct. App. 2012). California (through the District) ensures that those standards are achieved and maintained in the South Coast Air Basin. *Id.* The District issues and renews permits under the Clean Air Act, including the permit that the District issued to Exide for the Vernon Facility. In April 2013, the State of California ordered Exide to suspend operations for non-compliance with certain state requirements. (App. B0419)

Exide filed a voluntary petition for Chapter 11 protection on June 10, 2013. The Bankruptcy Court entered an order setting October 31, 2013 as the deadline or "bar date" for creditors to assert

---

[1] The appendix (D.I. 23) to the District's opening brief (D.I. 22) is cited herein as "App. __", and the appendix (D.I. 29) to Exide's answering brief (D.I. 28) is cited herein as "App. B__."

2

claims against Exide by filing proofs of claim. (App. 0482) The bar date for governmental agencies is set by statute as 180 days from the date of the bankruptcy filing. 11 U.S.C. § 502(b)(9). The Bankruptcy Court entered an order establishing December 9, 2013 as the governmental bar date in Exide's bankruptcy proceedings. (App. B0483)

On the governmental bar date, the District filed a proof of claim (the "Original Proof of Claim"), alleging $38,915,000 in liquidated penalties related to Exide's ownership and operation of the Vernon Facility (the "Original Penalties"). (App. B0845-53) The District's proof of claim listed five notices of violation ("NOVs") the District had issued between October 30, 2012 and December 4, 2013, which alleged that Exide failed to submit required reports, exceeded airborne emissions levels, and failed to implement "good operating practices." (App. B0849-53)

On January 16, 2014, the District filed a complaint in Los Angeles Superior Court asserting twelve causes of action alleging air quality violations that broadly overlapped the NOVs on which it based its Original Proof of Claim ("California Action"). (App. B076-88; B0507-08) The complaint sought to impose $40 million in fines on Exide. (App. B0788) Exide notified the District of its view that the complaint was an attempt to collect the same penalties that had been identified in the Original Proof of Claim and was a violation of the Bankruptcy Code's automatic stay provision. (App. B0648-49) The parties stipulated to allowing the California Action to go forward for the sole purpose of determining the amount of the District's claim, reserving the question of whether the claim would be allowed and payable for the Bankruptcy Court. (App. B0507-10)

Exide removed the California Action to federal district court on diversity grounds, and then the District moved to remand. (App. B0208-34) ("Remand Motion") The federal district court remanded on April 9, 2014. (App. B0235-238) ("Remand Order") Following the remand, the District amended its California Action complaint three times, ultimately adding new claims for both

pre- and post-petition conduct and increasing the amount of penalties it sought to impose to $80 million (the "Amended Penalties"). (App. B0789-844)

B. The Non-Prosecution Agreement

The District alleges that Exide received up to 40,000 spent batteries per day at the Vernon Facility and used hammers to crush and break them into three primary components: acid, lead, and crushed plastic casings. (D.I. 22 at 10 citing App. 026, App. 203) The District alleges that the casings are laced with lead and acid. (*Id.*) The District further alleges that Exide sprayed the casings with water and stored the resulting hazardous waste in van trailers on the grounds of the Vernon Facility, until they were transported elsewhere for disposal. (*Id.* citing App. 027, App. 204) The District has alleged that Exide was discharging lead in an unsafe manner while denying it was doing so in the annual compliance certifications that were a condition of Exide's permit. (D.I. 22 at 11) According to the District, Exide provided false certifications, as "Exide knew of its obligations to disclose violations, and it disclosed other violations" but never "disclose[d] the leaking of lead-contaminated hazardous waste from van trailers parked in the facility." (*Id.* citing App. 111-14, App. 204) Additionally, the District alleges that Exide concealed source test results and manipulated source testing conditions by dramatically altering operating conditions to avoid emissions violations. (*See* D.I. 22 at 11-13)

On March 11, 2015, during the Chapter 11 cases, Exide and the United States Attorney for the Central District of California entered into a Non-Prosecution Agreement ("NPA"). (App. 018-033) In the NPA, Exide admitted to having committed a number of environmental violations at the Vernon Facility over the previous two decades and agreed to permanently close the Vernon Facility. (App. B0529) Exide admitted to "knowingly storing corrosive and lead-contaminated hazardous waste inside leaking van trailers . . . parked at the [Vernon] Facility." (App. 027) Pursuant to the NPA, the parties estimated that the direct costs of Exide's compliance (i.e., the closure and

4

remediation efforts) would be between approximately $108 and $133 million. (App. B0537) The Bankruptcy Court entered an order approving the NPA on March 27, 2015. (App. B0524-26)

  **C.** **The Chapter 11 Plan Discharge and Injunction**

On March 27, 2015, the Bankruptcy Court entered an order confirming Exide's plan of reorganization, pursuant to which, *inter alia*, certain holders of Exide's pre-petition indebtedness took equity in exchange for such debt, and general unsecured creditors received a pro rata interest in a trust funded with a small amount of cash and rights to the proceeds of certain other assets, including causes of action potentially to be pursued by a trustee. Under the plan, Exide's equity was cancelled and equity holders received no recovery.

The plan provided for a broad discharge and related injunctive relief. Specifically, Article 12.2 of the plan provides that all claims arising before the effective date of the plan "shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely." (App. B0518-19) Article 12.11 of the plan provides a permanent injunction against "commencing or continuing any action" related to claims that are discharged pursuant to the Plan. (App. B0523) The plan became effective on April 30, 2015, and "New Exide" emerged from bankruptcy. (App. B0007) As a result of the consummation of the plan, New Exide replaced every member of its board of directors. (App. B0515-17)

  **D.** **The Discharge Motion and Administrative Expense Objection**

Following New Exide's emergence from bankruptcy, the District continued to amend its Complaint in the California Action. (B0789-844) ("Third Amended Complaint") Exide filed a motion to enforce the Plan's discharge and injunction in the Bankruptcy Court. (App. B0618-29) ("Discharge Motion") The District filed an administrative expense claim, seeking payment of penalties sought in the California Action. (App. B0650-57) Administrative expenses – which are statutorily defined as the "actual, necessary costs and expenses of preserving the estate," such as

5

"wages, salaries, and commissions for services rendered after commencement of the case" – receive priority over pre-petition claims and, so, are paid out of the estate before pre-petition unsecured creditors are paid. 11 U.S.C. §§ 503(b)(1)(A) & 507(a)(2). Granting the District administrative expense priority would mean that the District's allowed post-petition claims, if any, would be paid in full in cash by New Exide. Exide filed an objection to the District's Administrative Expense Claim ("Administrative Expense Objection"). The Bankruptcy Court directed the parties to establish a schedule to address the issues raised in connection with the District's pursuit of its claims. (App. B0680-82) The parties presented the Bankruptcy Court with extensive briefing on a set of motions seeking to resolve (i) whether the District's claim for penalties would be discharged or would continue to be enforceable in full against New Exide, (ii) whether the District's claim would be given administrative priority, and (iii) whether the District's claim would be limited to the approximately $38 million stated in its Original Proof of Claim or whether the Bankruptcy Court would recognize the District's subsequent submissions increasing the claim amount to $80 million.

On January 31, 2018, the Bankruptcy Court heard oral argument. With respect to the Discharge Motion, the District's main contention was that the penalties asserted in each iteration of its complaint should be excepted from discharge under § 1141(d)(6) of the Bankruptcy Code, which provides, in pertinent part:

> (6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt –
>
>> (A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as a result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; . . . .

11 U.S.C. § 1141(d)(6).

Section 523(a)(2)(A) provides an additional, narrow exception to the discharge of debts "for money, property, services, or an extension of credit, to the extent obtained by . . . false pretenses, a

false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The District argued that, based upon Exide's alleged misrepresentations, fraud, and fraud-like activities, Exide incurred penalties, constituting a "debt" under § 523(a)(2)(A), and that, through the application of § 1141(d)(6), which applies to corporate debtors, the District's claim for penalties should be excepted from Exide's discharge.

Conversely, Exide argued that the District's claim sought to collect ordinary noncompensable penalties owed to a governmental unit pursuant to § 523(a)(7), which are excepted from discharge only in the cases of individual debtors, not corporate debtors. Exide further argued that the District's claim did not fall within any of the other narrow exceptions to discharge the Bankruptcy Code permits in a corporate Chapter 11 case.

With respect to the Administrative Expense Objection, Exide argued that the District's claim was not an administrative expense claim in any respect and was barred under the Third Circuit's decision in *Pennsylvania Dep't. of Envtl. Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 698 (3d Cir. 1999) ("*Tri-State*"). *Tri-State* holds that criminal fines arising from post-petition behavior are not administrative expenses under § 503(b) and, therefore, are not accorded priority status pursuant to § 507(a)(1). The District countered that, unlike the criminal penalties considered in *Tri-State*, the penalties underlying the District's claim were civil. Thus, according to the District, *Tri-State* had no applicability, a conclusion for which the District found support in decisions of other Courts of Appeals.

With respect to the relate back issue, Exide argued that the District's submissions and contentions after the bar date included wholly new allegations and sought to recover new claims that did not relate back to its Original Proof of Claim.

7

### E. The Decision and Appeal

On April 30, 2019, the Bankruptcy Court issued its Decision, upholding Exide's position on each point. Following a detailed analysis, the Bankruptcy Court held that (i) the penalties the District sought in the California Action are dischargeable and, therefore, cannot be asserted against New Exide, *Exide*, 601 B.R. at 280-84; (ii) the District's claims are not entitled to administrative expense priority status under § 503(b), *id.* at 284-89, and (iii) the District's post-bar date claims, including the claims asserted in its amended complaints, do not relate back to or supplement the District's Original Proof of Claim, *id*. at 289-95.

On May 13, 2019, the District timely appealed the Decision. (D.I. 1) The appeal is fully briefed. (D.I. 22, 23, 25, 28, 29, 31) While the District does not appeal the Bankruptcy Court's ruling that the District's post-bar date claims and those asserted in its amended complaints do not relate back to or supplement the District's Original Proof of Claim, the District does appeal the Bankruptcy Court's ruling with respect to the dischargeability of its claims and denial of administrative expense priority status. The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

### III. JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a), district courts have mandatory jurisdiction to hear appeals "from final judgments, orders and decrees" and discretionary jurisdiction over appeals "from other interlocutory orders and decrees." 28 U.S.C. § 158(a)(1), (3). The Decision on appeal is a final order. Both issues on appeal require application of law to facts and are reviewed *de novo*. *See Schlumberger Resource Mgmt. Servs., Inc. v. CellNet Data Sys. (In re CellNet Data Sys.)*, 327 F.3d 242, 244 (3d Cir. 2003).

## IV. DISCUSSION

### A. The District's Claims Are Subject to Discharge

In § 523 of the Bankruptcy Code, Congress established a list of claim categories that are not dischargeable in a bankruptcy proceeding brought by an individual debtor. 11 U.S.C. § 523(a). The Bankruptcy Code dictates that only a handful of these exceptions apply to corporate debtors proceeding under Chapter 11. Among the claims that are non-dischargeable against an individual in bankruptcy are government fines or penalties, covered by § 523(a)(7), and claims by the government for money obtained by fraud, covered by § 523(a)(2)(A). For a corporate debtor, however, governmental penalties *are* dischargeable, although claims by the government for money obtained by fraud may not be subject to discharge.

The District argues that, based upon Exide's alleged misrepresentations, fraud, and fraud-like activities, the penalties imposed by the District are excepted from discharge as a "debt . . . for money . . . obtained by" fraud under § 523(a)(2)(A).

With respect to the District's claim for penalties, the Bankruptcy Court first observed that "[t]his debt falls squarely within 11 U.S.C. § 523(a)(7), which provides" that a discharge for an individual debtor does not discharge "any debt . . . [t]o the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." *Exide*, 601 B.R. at 280. The Bankruptcy Court noted that, according to the legislative history, "Congress specifically intended to allow corporations [unlike individuals] to discharge § 523(a)(7) penalties." *Id*. The Bankruptcy Court further noted that, in revising the Bankruptcy Code in 2000, Congress initially proposed to make such debts non-dischargeable for corporations, but that "based on public policy considerations, Congress ultimately limited the scope of the discharge exceptions for corporate debtors," concluding that non-compensatory penalties under § 523(a)(7) would be subject to discharge. *Id.* at 281.

9

The Bankruptcy Court went on to consider the District's argument that a particular claim may be non-dischargeable under multiple provisions of the Bankruptcy Code. As the Bankruptcy Court observed, the Supreme Court has stated that while each provision of section 523 "covered distinctive types of claims," there also "may be some overlap." *Id.* at 282 (citing *Husky Int'l Elecs. Inc. v. Ritz*, 136 S. Ct. 1581 (2016)). The Bankruptcy Court evaluated, and rejected, the District's argument that its claims should be considered a debt to the government for money obtained by fraud under § 523(a)(2)(A) – a category non-dischargeable as against a corporate debtor – finding that the discharge exception for claims arising from fraud is not applicable to the District's claim. For this exception to apply, the Bankruptcy Court noted that the District must establish that "the creditor sustained loss and damages as a proximate result of [a] misrepresentation having been made." *Exide*, 601 B.R. at 282-83 (internal quotation marks omitted). The penalties sought to be imposed by the District on Exide "do not represent the amount of loss or damages sustained by [the District] that were cause[d] by any alleged misrepresentation of the Debtors;" instead, those are "noncompensatory penalties for violating emission standards." *Id.* at 283.

On appeal, the District argues that the Decision begins with a lengthy recitation of facts but nowhere "describes the fraud that forms the essential predicate of the Discharge Motion (*i.e.*, the false certifications, concealed source test results, and manipulation of testing conditions), or the magnitude of Exide's releases of lead and arsenic into the air." (D.I. 22 at 17) According to the District, these neglected contentions are sufficient to state a claim for application of the fraud exception from discharge. In the District's view, the fraud exception from discharge applies to all debts traceable to fraudulent acts of the Debtor (*id.* at 21-25), which here must include civil penalties that result from concealment of the scope and extent of lead and arsenic emissions rendering those penalties non-dischargeable (*id.* at 25-30). The District further contends that the Bankruptcy Court erroneously constructed the fraud exception by limiting § 523(a)(2)(A) so as not

to overlap with § 523(a)(7) and by disregarding the stipulation limiting the scope of the issues in the Discharge Motion. (*Id*. at 30-38)

1. **The District's Claim Falls Squarely Within § 523(a)(7)**

The Bankruptcy Court correctly determined that the discharge exception applicable to the District's claim is § 523(a)(7), which applies to non-compensatory penalties levied by a government agency. The Bankruptcy Court further correctly determined that § 523(a)(7) does not apply in corporate chapter 11 cases. Although non-compensatory penalties are excepted from discharge in an individual debtor's case, "Section 523(a)(7) is not incorporated into section 1141(d)(6)'s narrow discharge exceptions for corporations." *Exide*, 601 B.R. at 280; *see also Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 562-63 (1990) (explaining that Congress "took care to except particular debts from discharge where policy considerations so warranted," giving "a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)'s exceptions to discharge").[2]

2. **The District's Claim for Penalties Is Not A "Debt . . . for Money . . . Obtained by" Fraud**

The Bankruptcy Court correctly declined the District's invitation to recast the District's claim for the Original Penalties as one for money obtained by fraud under § 523(a)(2)(A). As Exide correctly points out, there is no allegation in the Original Proof of Claim that Exide committed fraud. Instead, the District disclosed the basis for its claim as "Fines and Penalties for environmental violations." (App. B0846-53) The claim listed five NOVs issued to Exide,

---

[2] Congress has since amended Chapter 13 to make criminal restitution and fines (but no other governmental fines and penalties) non-dischargeable, although it did so not by importing § 523(a)(7) into Chapter 13, but by providing in § 1328(a)(3) that debts "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime" are non-dischargeable. 11 U.S.C. § 1328(a)(3). Congress later narrowed the Chapter 13 discharge by incorporating certain § 523(a) exceptions but, again, did not include (a)(7). *See* 11 U.S.C. § 1328(a)(2) (incorporating "(1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)").

describing the alleged violations as failure to file compliance certifications by applicable deadlines, emissions exceedances over a 13-day period in 2012 and one additional day in June 2012, and failure to implement "good operating practices" at the Vernon Facility. (App. B0849-53) None of these violations required a finding of falsity or fraud.

The first mention by the District of any false statement by Exide appeared in the District's Third Amended Complaint, which it filed in the California Action years after the bar date had passed. The Bankruptcy Court rejected the District's efforts to expand its claims through the amendment of the Original Proof of Claim based on the Third Amended Complaint, ruling that such claims do not relate back to the District's bar date filing. "The circumstances of this case do not support a determination that [the District's] new claims arise out of the same conduct, transaction or occurrence as listed in the Original Proof of Claim, which was limited and specific." *Exide*, 601 B.R. at 294-95. The Bankruptcy Court's determination that the fraud-based claims asserted by the District did not relate back to the Original Proof of Claim was not appealed by the District.

Even assuming that the District had timely asserted claims including allegations of misrepresentation or fraud, the Court agrees with the Decision that the District's contention fails to satisfy the discharge exception. (D.I. 28 at 30-31) The discharge exception "for claims arising from fraud" under § 523(a)(2)(A) is not applicable to the District's claim because the claim did not satisfy a prima facie element of fraud: "that a creditor sustained loss and damages as a proximate result of the misrepresentations having been made." *Exide*, 601 B.R. at 282 (internal citation omitted). As the Bankruptcy Court correctly concluded, "These penalties do not represent the amount of loss or damages sustained by the District that were cause[d] by any alleged misrepresentation of the Debtors; they are noncompensatory penalties for violating emission standards. Therefore, the District's claim does not satisfy the fifth element of a prima facie case for nondischargeability under § 523(a)(2)(A)." *Id.* at 283.

The District asks the Court to find error in the Bankruptcy Court's decision because the fraud exception from discharge extends to all debts "'resulting from' or 'traceable to' fraud." *Cohen v. de la Cruz,* 523 U.S. 213, 218 (1998). The District argues that the civil penalties it imposed are directly traceable to Exide's fraud, as Exide would not have been permitted to continue operating the Vernon facility (incurring penalties) without having engaged in fraud. (D.I. 22 at 4) The Bankruptcy Court committed no error in rejecting this argument. The regulations that authorize the Original Penalties are not based on fraud; rather, they are strict liability violations. (App. B0039, B0216, B0688) The Court agrees with the Bankruptcy Court's understanding of *Cohen* as allowing "noncompensable penalties" to be dischargeable except when they were "awarded as part of the fraudulent debt." *Exide*, 601 B.R. at 283-84; *see also Husky*, 136 S. Ct. at 1590 (finding claims non-dischargeable for debtor who committed multiple acts of fraudulent conveyance that drained assets, as fraudulent conveyance is traditionally regarded as form of fraud); *Archer v. Warner*, 538 U.S. 314, 321 (2003) (holding that claim based on settlement with debtor for fraud "arises" out of underlying claim of fraud and was non-dischargeable under § 523(A)(2)(a)).

### 3. The Bankruptcy Court Did Not Erroneously Limit Application of § 523(a)(2)(A)

The District urges the Court to hold that while its claim is clearly a governmental penalty that falls within § 523(a)(7), it is also a debt for money obtained by fraud under § 523(a)(2)(A). The Bankruptcy Court concluded that the District's claim was not a "debt [] for money [] obtained by [] fraud."

The § 523(a)(7) exception to discharge, which applies to individuals and not corporations, provides that "a discharge under . . . this title does not discharge an individual from any debt . . . to the extent such a debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not ***compensation for actual pecuniary loss*** . . . ." 11 U.S.C. § 523(a)(7) (emphasis added). The Bankruptcy Court's Decision faults the District for "fail[ing] to explain how

the specific penalties sought here are *compensation* for any *actual pecuniary loss*." *Exide*, 601 B.R. at 283 (emphasis added). According to the District, nothing in § 523(a)(2) (unlike § 523(a)(7)) conditions non-dischargeability on whether the penalties are "compensatory" or whether the District itself lost money or property.

Third Circuit precedent holds that § 523(a)(2) applies only where there has been a compensable harm. In *SEC v. Bocchino (In re Bocchino)*, 794 F.3d 376 (3d Cir. 2015), the Third Circuit stated that it had "approved [a] formulation" of the elements of section 523(a)(2)(A) under which a creditor must show, among other elements, that the "debtor obtained money, property or services through a material misrepresentation," that the "debtor intended to deceive the creditor," and that "the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations." *Id*. at 380-82. In *Bocchino*, then, the portion of a claim that constituted non-compensatory civil penalties was discharged, while the remaining portion – for compensatory items such as disgorgement and interest – was not. *See id.* at 378-79.

The Court agrees with the Bankruptcy Court's understanding of both sections 523(a)(2) and 523(a)(7) and its conclusion that the District's claim was dischargeable.[3]

**B.  The Bankruptcy Court Properly Denied Administrative Expense Priority**

The District requested treatment of certain of its Amended Penalties as administrative expenses under § 503(b)(A)(1) of the Bankruptcy Code. Section 503(b) of the Bankruptcy Code

---

[3] As the Bankruptcy Court noted, and Exide concedes, some of § 523(a)'s non-dischargeability categories may overlap. *See Husky*, 136 S. Ct. at 1581, 1588. The SEC cites several cases identifying overlaps among exceptions from discharge, including some finding overlap between § 523(a)(2) and § 523(a)(7). (D.I. 25 at 6-9) It appears that in these cases any overlap existed only to the extent that "the penalties associated with the fraud should be regarded as essentially the same as the fraud itself and are to be included under the 523(a)(2) exception to discharge, as a debt arising from fraud." *Andrews v. Mich. Unemployment Ins. Agency*, 891 F.3d 245, 249 (6th Cir. 2018). The SEC does not cite any cases holding that non-compensatory penalties are independently excepted from discharge under § 523(a)(2). The Court finds no error in the Bankruptcy Court's conclusion that the District's claim for non-compensatory penalties for alleged pre-petition violations of emissions regulations "falls squarely within 11 U.S.C. § 523(a)(7)." *Exide*, 601 B.R. at 280.

establishes the claims entitled to be treated as administrative expenses, and provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). Section 507(a)(2) of the Bankruptcy Code gives priority to administrative expenses, so they are paid in full in front of claims of other creditors. The treatment the District sought would have required New Exide to pay the District's Amended Penalties in full in cash, while the creditors that did business with and funded Exide for years before its bankruptcy received only pro rata, partial distributions, sometimes in debt and/or equity.

Requests for administrative priority are strictly scrutinized, and claimants bear a "heavy burden" to establish the statutory prerequisites. *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl., Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999). "As with all of the Bankruptcy Code's priority statutes, section 503(b)(3) is to be narrowly construed so that administrative expenses will be held to a minimum." *Leidos Eng'g, LLC v. KiOR, Inc. (In re KiOR, Inc.)*, 567 B.R. 451, 458 (D. Del. 2017).

As the Bankruptcy Court correctly explained, the Third Circuit in *Tri-State*, 178 F.3d at 698, held that "punitive criminal fines arising from post-petition behavior are not administrative expenses under 11 U.S.C. § 503(b)." Even assuming (without deciding) that the District is not judicially estopped from arguing that its Amended Penalties are ***not*** criminal fines – having argued, in successfully obtaining remand of the California Action to state court, that the penalties it sought to impose are "quasi-criminal" (*see* App. B0208-34; B.D.I. 4604 Ex. A. at 19; B.D.I. 4604 Ex. B (Remand Order granting noting "[t]his is fundamentally a law enforcement action")) – the District fails to persuasively distinguish *Tri-State*. Instead, the Court agrees with the Bankruptcy Court that regardless of whether the District's penalties are called civil, criminal, or "quasi-criminal," their purpose is to punish and deter. Hence, the penalties do not meet the binding Third Circuit test for

15

administrative expense priority. They do not, for instance, benefit the estate. *O'Brien*, 181 F.3d at 532-33; *see also Tri-State*, 178 F.3d at 689; *In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (requiring "an actual and necessary benefit to the debtor in the operation of its business"); *In re Insilco Techs., Inc.*, 309 B.R. 111, 114 (Bankr. D. Del. 2004) (rejecting state environmental agency's administrative expense claim for environmental clean up costs on property that debtors sold before petition date, as administrative priority requires that "(1) expense arose from a post-petition transaction with the debtor and (2) that the transaction accorded the estate an actual benefit").

*Tri-State* denied administrative expense status to the state's environmental fine because it was punitive, not compensatory. "[T]he sanction that was imposed as punishment . . . has nothing to do with compensation or proper business operations. Rather, the purpose of this criminal fine is deterrence, retribution, and punishment." 178 F.3d at 693. The Court agrees with the Decision that the same result applies here, where the District's fines are not compensatory but rather are strict-liability and do not represent a *quid pro quo* exchange for Exide's benefit.

The District's reliance on the Third Circuit's decision in *Pennsylvania Department of Environmental Resources v. Conroy*, 24 F.3d 568 (3d Cir. 1994), is unavailing. There, the state environmental agency stepped in to dispose of certain hazardous waste after the Chapter 11 debtor refused to do so. *See id*. at 569. Administrative priority was accorded to those costs because they were to "***compensate*** for the costs [the state] incurred in obtaining authorization for the cleanup and in coordinating and monitoring the contractor's work." *Id*. at 570 (emphasis added). *Tri-State* explained that *Conroy* "support[s] the distinction we draw [in *Tri-State*] between claims for compensatory expenses and those for criminal fines." *Id*. at 693. *Conroy* and *Tri-State*, taken

together, make clear that compensatory fines and penalties may be treated as administrative expenses, but punitive fines and penalties, like those here, cannot.[4]

The District argues that Exide's choice not to operate in compliance with applicable law during bankruptcy provided a benefit to the Exide, and administrative expenses must include non-compensatory civil penalties resulting from its violations. The District cites some out-of-circuit cases that have concluded that non-compensatory fines or penalties can qualify for administrative expense priority, but the Bankruptcy Court chose not to join these non-binding, extra-circuit decisions. This Court agrees with the Bankruptcy Court.

**V. CONCLUSION**

For the reasons set forth above, the Court will affirm the Decision. An appropriate Order follows.

March 24, 2020  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE

---

[4] Likewise, the District's reliance on *Reading Company v. Brown*, 392 U.S. 471, 483 (1968), is unpersuasive, as that case, too, reinforces the distinction between compensatory and punitive expenses. *Id*. at 483.